1836.

WICKES
*v.*
CLARKE.

---

WICKES and another *v.* CLARKE and others.

---

A wife, by property of her own, may become a purchaser from the husband so as to support a post-nuptial settlement.

Prior advances to a husband, out of the wife's property, will not be taken as part consideration for a settlement (where not mentioned therein) unless there was an agreement at the time that they were made to secure her a settlement. There must be an intentional connection between the previous advances and the subsequent deed.

For the court to interfere and set aside a voluntary settlement on a wife, where debts of the husband existed, fraud must appear; the indebtedness is but a presumption of it and may be explained.

Where a husband settles his own property upon his own family while he is in debt, there will be the most rigid scrutiny, and the fairness of the transaction must clearly appear. The case is different where it is the wife's property. Her equity entitles her to a settlement of it, and the court will uphold it in favor of wife and children against the husband, his assignees and creditors. So that, a settlement of her property (coming before or after marriage) made on his insolvency or inability, and when there has been no previous settlement, and especially if he has before received a part of her fortune, will be deemed to be made on good consideration and be valid as against the husband's creditors.

When a bill seeks to set aside a voluntary settlement, solely on the ground of its being voluntary and therefore fraudulent, the court will not look to the point of the secured income being excessive. If such a charge had been made in the pleading, *it would seem* that a reference could be had.

*Nov.* 18, 1836.

*Voluntary settlement. Husband and wife. Debtor and creditor.*

THE complainants were creditors of the defendant, Peter Clarke, by judgment recovered on the twenty-first day of October, one thousand eight hundred and thirty-one, upon a joint and several bond, given by this defendant and James B. Clarke, as his surety, conditioned for the payment of four thousand

dollars.   Of this sum, two thousand dollars remained unpaid ; 1836.
and after a writ of *fi. fa.* had been issued and returned unsat-
isfied, the bill in this cause was filed principally for the pur- WICKES
pose of setting aside a post-nuptial settlement, made in favor *v.*
of the wife of Peter Clarke, by deed executed by both to the CLARKE.
defendant Robert Bogardus, as trustee, on the sixteenth day
of December, in the year one thousand eight hundred and
twenty-nine.

This deed purported to convey a large real and personal
property that had descended to the wife, as one of the heirs at
law and next of kin of her uncle John Fisher, who had died
in June, one thousand eight hundred and twenty-seven.

The husband's estate and interest in this property was now
sought to be reached, upon the ground that the conveyance
was a voluntary one, not founded upon any valuable considera-
tion ; and, therefore, fraudulent and void as against antecedent
creditors whose debts remained unsatisfied.

The deed in question was attempted to be supported, on the
ground of a purchase, by the wife, for a valuable consideration ;
and, for this purpose, Mr. Bogardus, the trustee, had been ex-
amined as a witness for his co-defendants, subject to all proper
exceptions.   His competency was objected to, by reason of a
supposed interest to support the trust, as it was said he would
be entitled to a compensation for executing it.   And it was
also contended, that in any event and under any circumstances
the testimony did not prove a consideration paid or given for
the conveyance.

The consideration expressed in the deed was one dollar ;
and no other was mentioned or recited.

The testimony will be found sufficiently referred to in the
opinion of the court.

Mr. *W. Kent*, for the complainants.

Mr. *R. Bogardus*, for the defendants.

THE VICE-CHANCELLOR :—It cannot be denied that a wife, *January* 3,
by means of property which she acquires in her own right, 1837.
may become a purchaser from her husband ; and a post-nup-
tial settlement made by a husband of his property upon the

wife and children, based on actual purchase made in good faith and for a valuable consideration, will be good against prior as well as subsequent creditors: *Lady Arundel* v. *Phipps*, 10 Ves. 140: Atherly, 155, 161.

As the consideration for the deed is one dollar and no other is mentioned, it may be inferred that nothing more than a mere nominal consideration entered into the minds of the parties at the time, and that the conveyance was intended to be what its silence in that respect would indicate—a mere voluntary act to secure to the wife the use of the whole property, real and personal, which had then lately descended to her upon the decease of her uncle, discharged of any right or interest, which her husband, by law, might have in it; and the difficulty with respect to the testimony of Mr. Bogardus is, that although it proves that as far back as the year eighteen hundred and four, the wife applied a considerable part of her then patrimonial estate to the payment of her husband's debts; and again, in eighteen hundred and eleven, appropriated another large landed estate to the purpose of securing and paying other debts of her husband, and among them, the bond debt of the complainants; and again, in eighteen hundred and twenty-nine, mortgaged a part of the property which came from her uncle, and which is included in the trust deed in question, to raise the sum of two thousand dollars for the use of her husband and for which the property is still liable; yet it does not show that these previous transactions entered into the arrangement and formed the consideration or inducement for the making of the deed. In order to render these advances of the wife's property a consideration for the subsequent settlement of the husband's property upon the wife, it should appear, either that there was an agreement between the husband and wife, at the time the advances were made, to secure her by settlement, and such an agreement as it would be obligatory upon him to perform; or that her parting with her own property or encumbering it for her husband's benefit was intended to serve as a consideration for a settlement to be afterwards made by him; and that the deed of settlement, when executed, had reference thereto—in short, that there was some connexion between these previous advances and the subsequent deed. This appears to be the principle laid down by chancellor Kent in

*Reade* v. *Livingston*, 3 John. Ch. R. 481, when considering the point how far a parol promise or agreement to make a settlement will support a subsequent deed, as against prior creditors.

Nor are the circumstances here of such a nature, as necessarily, in the absence of proof, to raise the presumption that the deed was founded upon the previous devotion and relinquishment of the wife's property to the husband's use. *Atherly* observes, (at p. 164,) "that if the settlement, on the face of it, appears to be purely voluntary, no notice being taken of the wife having released her jointure, and yet, if the fact of her having done so can be shown to have taken place about the same time that the settlement was made, in that case the court will presume the relinquishment of the jointure to have been the consideration for the settlement." This observation is founded upon the circumstances of the case of *Scott* v. *Bell*, 2 Lev. 70, where an old settlement, by way of jointure, upon a wife, was relinquished by her and sold, and, on the same day, a new settlement was made upon her; and Chief Justice Hale and the rest of the court held, that they would presume the wife would not have parted with her estate by the old settlement, unless the husband would make the same provision for her by the new, and that the one was intended as a consideration for the other. See also an *Anonymous Case*, Prec. in Ch. 101.

But in *Lavender* v. *Blackstone*, 2 Lev. 146, where the husband, upon his marriage, being then under age, promised to make a settlement when he came of age, and the settlement not being made till three or four years after that event, and then not directly according to the promise, the same court held it should not be presumed to be made in performance of the promise; and required direct proof to that effect, in order to sustain the deed against creditors.

Then, considering the present as a voluntary deed not founded on a valuable consideration, (and I am of opinion it must be so regarded:) the next question would be, if there were no other circumstances to support it, whether it is void as to prior creditors? The doctrine, that a voluntary settlement which has been made after marriage by a person indebted at the time, will be presumed fraudulent and void against

1836.

WICKES
v.
CLARKE.

antecedent creditors, without regard to the amount of existing debts, the extent of the property settled or the circumstances of the party and that no circumstances will permit such debts to be affected by the settlement or repel the legal presumption of fraud, (as stated by Chancellor Kent in *Reade* v. *Livingston*, to be the result of the English cases and reiterated by him in *Bayard* v. *Hoffman*, 4 John. Ch. R. 450,) has undergone some modification since, by the decision of the court for the correction of errors in *Seward* v. *Jackson*, 8 Cowen, 406. To authorize the court to interfere with and declare a voluntary settlement void, even as to creditors whose debts existed when the deed was made, intentional fraud must appear ; and prior indebtedness is but a badge or argument of fraud, which may be explained away or repelled by circumstances. (*a*)    A recent decision of the chancellor in *Van Wyck* v. *Seward,* which went up by appeal from a decision made here, (see 1 Edw. V. Ch. R. 327, *S. C.* on the appeal, 18 Wend. 375,) proceeds upon the principle and affirms the decree dismissing the bill filed for the purpose of setting aside a voluntary settlement made by a father upon his children, because it was apparent, from the circumstances and condition of the father in other respects, that he had no intention to defraud his creditor.    But the present case does not call for an inquiry into the motives of Peter Clarke in uniting with his wife in the conveyance of the property in question to a trustee for her benefit.    Although it may *be deemed voluntary and debts against him* may remain unpaid, there are other considerations to be attended to in favor of the wife, which distinguish this from the ordinary case of a husband making a settlement of his own property or property which he possesses in his own right upon his family under similar circumstances.    In such case there should be the most rigid scrutiny ; and the fairness and honesty of the transaction must appear in the clearest light to induce the court to sustain it.    But the case is very different where the wife's property, acquired during coverture, as in this instance, is the subject of the settlement ; for, with respect to both real and personal property which comes to the wife by gift or in-

(*a*) See the late English case of *Townsend* v. *Westacott,* 2 Bevan's Ch. Rep. 340.

1836.

WICKES
v.
CLARKE.

heritance and in which the husband gains an estate or interest in law by virtue of the marriage, the "wife's equity," (as it is called) entitles her to a settlement, which this court will universally enforce in favor of the wife and even the children of the marriage against the husband and all claiming under him, such as assignees or creditors, especially whenever they are obliged to seek the aid of the court to reach the property, (Clancy, 440.) And I think it may be assumed, as a rule, that the same circumstances, which would induce the court to compel a settlement by the husband or those claiming under him or in his right, will operate to uphold a deed of settlement already made to the same extent that would be required if one should be directed to be made under the view of the court.

There are a few cases having a direct bearing upon this point. In *Moor* v. *Rycault*, Prec. in Ch. 22, the wife, at the time of the marriage, had a considerable portion in the trustees' hands. After the marriage, the friends of the wife required that it should be settled for her benefit ; whereupon it was agreed that the money should be laid out in land to be settled to the use of the husband and wife and the heirs of their bodies. A creditor of the husband exhibited a bill, upon the ground that the settlement was after the marriage and voluntary, and so ought not to deprive the creditor of his debt. But it was held, that if the husband himself had exhibited a bill against the trustees for the portion, the court would not have decreed it to him without making some such settlement ; and so the creditor's bill was dismissed. *Hinton* v. *Scot*, Mosely's Rep. 336, is the next case, where the husband, who had a considerable portion with his wife on the marriage and had never made any provision for her, afterwards, upon her becoming entitled, on the death of her father, a freeman of London, to an orphanage part, assigned over such orphanage part to trustees for his wife's sole and separate use during life and then for her children. And upon the husband's creditors filing a bill to have the money paid to them, as fraudulently assigned, the M. R. (Sir Joseph Jekyll) supposed the plaintiffs to be creditors prior to the assignment, though they had not clearly proved the fact to be so ; and held that the husband, being in poor circumstances and the wife wholly unprovided

for, the creditors should not set aside the assignment or have the interest of the money during his life, for it was a reasonable settlement and such as the court would have obliged the husband to make, if he had sued for the orphanage part in that court; and, accordingly, dismissed the bill.

The same principle is found in *Middlecombe* v. *Marlow*, 2 Atk. 519, and in *Wheeler* v. *Caryl*, Amb. 121, both of which were decided by Lord Hardwicke, who holds this language: "If the husband comes for aid here, this court will decree an adequate settlement to be made on the wife, and will support it as a good settlement for a valuable consideration; and if, after marriage, the husband does agree to do that which the court would have decreed, it shall not be deemed unreasonable, but be held a good settlement against creditors."

These cases are cited in *Clancy*, 446; and they appear to establish the principle which he lays down, that a settlement of the wife's property or property which the husband acquires in her right during coverture, made on the occasion of his insolvency or other inability to provide for her and where there has been no previous settlement and especially if the husband has before received a part of his wife's fortune, is made on so good a consideration that it will be deemed valid against the husband's creditors, though entered into after marriage and though the husband was indebted at the time of such settlement. Upon this ground and under circumstances so analogous it is the duty of the court not to interfere with the deed in question. Here is the case of an insolvent husband; a wife and a large family of children destitute of the means of support, except from property which she has acquired from inheritance or gift during the coverture; the debts of the husband not contracted on the credit of his interest in the property thus acquired; a settlement of the property made for the benefit of the wife and children, and in point of amount and income not shown to be unreasonable; while the bill does not undertake to impeach it on that ground and to claim any excess beyond what may be necessary for their support, but proceeds to set aside the deed solely on the ground of its being voluntary and fraudulent as to creditors. This, it appears, is of no avail against the wife's equity, which, after all, is sufficient to support the deed in the view of this court and to entitle the wife

to the full benefit of the property, until it can be shown, on the part of creditors, to contain an unreasonably large provision and more than the wife's necessities require. If there had been any allegations of this sort, a reference, perhaps, would be proper to ascertain how far the settlement in question is excessive and unreasonable in amount. But, as the case stands before me, I think I must dismiss the bill as to the wife and her trustee; yet, under the circumstances, without costs. As to the defendant, Peter Clarke, the complainants have a right to retain the bill for the purpose of a decree, as to his individual property not embraced in the settlement deed, which his answer discloses; and over which a receiver may be appointed, with authority to sell and to hold the proceeds subject to the further order of the court.