By the Court. Oakley, Ch. J.
The court have considered this case with some care, and now proceed briefly to state their views. The case was argued on one question, which was presented at that time as the only one of any materiality involved in the case, and it was fully discussed by the counsel on that point, and considered by the court. In the course of our examination, it occurred to us there was a point involved which had not been presented, and we directed the matter to be spoken to again. It was re-argued, and it now comes up for final judgment.
The case was this: It was a time policy of insurance for one year on the brig Joseph Atkins, owned by Bead & Hoppock. The brig was valued at $4500. She proceeded from this port, and in the vicinity of the island of Cuba met with some disaster and put into Matanzas, arriving there in a disabled condition. A survey was called, it was deemed proper to repair the vessel, *61 and the captain proceeded to repair. The house of Drake, Brothers & Co. of that place, were the correspondents of the owners, and had a certain amount of funds in their hands belonging to the plaintiffs, which were applied by the captain towards the repairs of the ship. The funds were not sufficient; and in order to raise the necessary amount, the captain borrowed of this house §1700, and in security therefor executed a bottomry bond on the brig, payable ten days after the arrival of the vessel at New York. She took on board a cargo and set sail for New York. On the passage she received some damage, and put into Savannah, where she had some repairs, but to a small amount, in regard to which there is no question. Being refitted, she proceeded for New York, but off Cape Hatteras was totally lost. Drake, Brothers & Co. insured at Havana them bottomry interest. It was admitted on the argument, that the house of Drake, Brothers & Co. received the amount of their bottomry interest, from the insurance company at Havana, some months after the suit was brought.
The plaintiffs in them declaration have two counts; one for the partial loss at Matanzas, and the second for a total loss, arising out of the final destruction of the vessel.
The defendants paid into court on the first count $1180, which was the sum remaining due for the partial loss after applying the proceeds received by plaintiffs on the bottomry bond; and on the second count §4100, for the total loss. The latter sum fell short between $400 and $500 of the actual amount of loss ; and in that state of the case the matter was brought to trial.
Two questions have arisen in the case. First, have the plaintiffs a right to recover on the first count, on the ground of a pa/rUal loss ; and, second, what sum are they entitled to recover on the ground of a total loss ?
On the part of the defendants it is attempted to avail themselves of the money received through the loan on the bottomry bond by Drake, Brothers & Co., because, as the vessel was totally lost, and Read & Hoppock discharged from their personal responsibility for the debt of the vessel, they had not lost the money, and had no right to claim of the defendants for that amount.
*62 On the other hand, it is contended that the insurers have no connexion whatever with any account of Read & Hoppock as respects the raising of funds for repairing the vessel, and it was no matter to them how that money was acquired, whether by mortgaging the ship, or in any other way; that the obligation of the company is to pay the loss, and they cannot avail themselves of the state of facts set up in respect of the insurance on the bottomry.
We think the views of the defendants in this particular are not correct. They cannot avail themselves of this as a defence to the payment for a partial loss.
The defendants’ counsel pressed very much on the court, in the argument, the case of Godsall v. Boldero (9 East 72), as containing, what he says is a principle which goes the whole length of sustaining his views. We have examined that case, (as it was the only case much relied on as to this point,) with some care, to see in what manner the question arose and what principle was established by it. That was an insurance on the life of Mr. Pitt, formerly prime minister of England, who was indebted to the plaintiff; the plaintiff having thereby an interest in the life of Mr. Pitt, of course had a right to insure it, and did so. Mr. Pitt died. The Parliament of England determined to pay his debts, and made a large appropriation for that purpose, which was placed in the hands of his executors. They paid the plaintiff’s debt, notwithstanding which he brought the action against the insurance company on the life policy, under the idea that his interest in the life of Mi'. Pitt was something distinct and separate from the debt, and did not depend upon the debt; that the contract was with the insurance company, and that they must pay him accordingly. On looking at the pleadings, it appears that the plea on which the verdict was entered, expressly set up the fact that the debt was the interest which the plaintiff had in the life of Mr. Pitt, and that the debt was paid by the executors before the suit. On that plea the parties went to trial. It was agreed the court should enter judgment as they might find the facts to be. The court ordered judgment for the defendant on the plea setting up the payment *63 of the debt by the debtor, or which was the same thing, by his executors. The court said the whole object of the insurance was to indemnify the plaintiff; that he had been paid the debt by the executors of Mi1. Pitt, and it was immaterial from what quarter the fund came, whether from parliament or any other way, for in either event the contingency had been answered.(a.)
Now we do not consider that any principle is established by that case which will entitle these defendants to set up that the funds which had been appropriated for repairs, came from any quarter except from the plaintiffs themselves, or from funds furnished by their agent, and by them reimbursed. The liability on the bottomry bond remained as to the vessel, and had she arrived, nobody contends that there would have been any question on the partial loss, because the borrowing of the money with or without security, could make no difference. We think the claim of the defendants, setting up this receipt of the money borrowed on the bottomry bond as discharging the company from paying the amount of the partial loss, cannot be sustained, and that the plaintiff is entitled to judgment on the first count for the entire partial loss.
The next question is whether in respect of the total loss there can be any reduction made on the ground of the bottomry. That was the question which the court directed to be argued on the second occasion. The result of our deliberations is, that under the circumstances, the bottomry bond must go in diminution of the plaintiffs’ claim on the policy for the total loss of the vessel. The principle is well established in this state, by a decision in the court of errors, that where a vessel is under bottomry at the time of the insurance, the owners have to that extent no insurable interest in the vessel. (Smith v. Williams, 2 Caines’ Cas. in Error 110; 1 Phill. on Ins. 113.) The reason is obvious. The vessel was under bottomry for its full value. *64 In case of loss, the insured, if paid, would receive the value, and yet had nothing at hazard. In such a case, if she arrive safe, he has the vessel and has to pay the bottomry bond; if the vessel is lost, he is discharged from the bottomry bond, and has received the money advanced upon it. The party, in such a case, has no interest that he can insure. In Watson v. Insurance Co. of North America, 3 Wash. C. C. R. I., the same principle was applied. The bottomry bond was for part of the value of the vessel. There was a valued policy, the vessel was lost, and the question was, could the valuation be opened to let in the claim of the insurance company, so that the bottomry bond previously made on the vessel, though without the knowledge of the party, could be deducted from the amount. Judge Washington held that it could be done. He opened the policy, and said it was proper under the circumstances, because the party ought to have no more than a just indemnity. The case is not fully stated, but it is evident that such was the principle.
The case in our own courts is decisive. Assuming the principle to be established that where there is a bottomry bond at the time of the insurance, the bottomry shall be in diminution of the value of the interest of the assured, to the extent of the bottomry, thus extinguishing the interest wholly or in part, we think it necessarily follows that the execution of the bottomry bond after insurance is effected, operates on the interest of the assured in the same way. If a loss take place, the borrower is discharged, and his interest is extinguished to that extent. It is admitted that after effecting insurance to the value of the ship, if the owner should sell part of the vessel he cannot recover beyond his actual interest. We see no reason why this conditional transfer should not operate in the same way. It is exact justice, and prevents more than a just indemnity. It is an act of the plaintiffs, by which their interest in the vessel is in that way paid for and extinguished. They no longer owned anything in that ship except what remained beyond the bottomry bond.
We think, therefore, on the last count of the declaration, the plaintiffs could not have recovered anything except what remained over the value of the bottomry bond. The defendants *65 having paid money into court, by which they have admitted the right of the plaintiffs to recover to that extent, we consider we cannot interfere with that proceeding; but they cannot have judgment beyond the amount so paid in.
These are the general views we have taken of the case. We are not aware that the question has ever been raised before, but adopting the principle established in Smith v. Williams, we think there is no doubt on the subject.
Judgment for the plaintiff for the partial loss, less the sum paid into court on the first count. The plaintiffs are not entitled to recover for the total loss beyond the sum paid into court therefor.

 Although the insurers thus succeeded in Godsall v. Boldero, they paid to the plaintiff the amount of the insurance before they left the court; probably not from any d,oubt as to sustaining the decision, but to maintain their reputation with the public. Ellis on Ins., 126, note e; 1 Phill. on Ins. 149.