N. E. PERKINS *et al. vs.* PETER A. PERKINS *et al.*

April Term, 1874.

HUSBAND AND WIFE—SETTLEMENT ON WIFE—CONSIDERATION.—Prior advances to a husband out of the wife's property will not constitute a consideration for a subsequent settlement on the wife, when not mentioned therein, unless there was an agreement at the time they were made to secure her a settlement.

SAME—SAME.—But such advances may be looked to to explain the execution of the settlement, and as evidence of the good faith of the parties.

VOLUNTARY SETTLEMENT BY PERSON IN DEBT.—A voluntary settlement by a husband upon his wife and children is not void *per se* as to existing creditors.

*J. D. Park*, for complainants.

*Ed. Baxter*, for defendants.

THE CHANCELLOR :—This record consists of three attachment suits brought by three different creditors of Peter A. Perkins, against the same defendants to reach the same funds. The first bill was filed on the 6th of May, 1865, by N. E. Perkins; the second, on the 10th of May, 1865, by John S. Park, and the third, on the 23d of August, 1865, by Jas. A. and Wm. R. McAllister. The object of each suit is to subject to the satisfaction of the debt of the complainant a note of the defendants, James and George Lumsden, dated 24th of October, 1861, and made payable to Peter A. Perkins, at twelve months, for $12,488, and which note had been transferred and assigned by the said Peter A. Perkins, on the 31st of May, 1862, to the defendant, W. O'N. Perkins, by deed of settlement of that date conveying said note, with other property, to W. O'N. Perkins in trust for the sole and separate use of Sarah A. Perkins, the wife of the said Peter A. Perkins, and their children. The first bill is based solely upon the ground that the liability on which the complainant proceeds is a debt of Peter A. Perkins, which was in existence at the time the

deed of settlement was made; that said Peter A. was also indebted to other persons in other sums; that the settlement was voluntary and without consideration, and therefore fraudulent and void as to said creditors. The second bill is almost identically the same in substance, alleging in addition that "much of such other indebtedness, as well as the debt of your orator, remains unpaid." The third bill avers that the said Peter A. Perkins, at the time of making the settlement, was "largely indebted, and indeed without property sufficient to discharge his then indebtedness, a large amount of which still remains unpaid, and that his object and intention in the making of such pretended settlement was, as your orators are informed, believe and charge, to place said note or notes, or the proceeds thereof, beyond the reach of his then creditors." And so complainants charge, that the settlement was made with the intent and for the purpose of hindering, delaying and defrauding the creditors of the said Peter A. Perkins.

Peter A. Perkins, his wife, Sarah A. Perkins, and W. O'N. Perkins each filed separate answers denying all fraud, and alleging, that the settlement was made in good faith for the purpose of making a suitable and proper provision for the wife and children, in view of the circumstances of the husband at the time, and that he retained ample means to pay off all his then creditors. Mrs. Perkins, in addition, insists that the settlement was made in fulfillment of a promise given to her by her husband in the year 1850, or about that time, in consideration of the fact that she had united with him in selling certain real estate which descended to her from her father, and had also received a number of slaves and other personalty through her.

The Lumsdens answered, admitting that in October, 1861, they bought of Peter A. Perkins a valuable tract of land in Williamson county, Tennessee, at the price of $40,000, of which they paid in cash $27,512, and gave their note at one year from the 24th of October, 1861, for $12,488; that this note was, they believe, transferred and assigned to W. O'N.

Perkins as charged, and that they had paid all of it except about $3,000. They stated that Peter A Perkins had made them a deed to said land in fee with covenants of warranty and seizin, and against incumbrances, but retaining a lien for the purchase-money until fully paid. That the land was in fact at the time, without their knowledge and contrary to the assurances made by the vendor, subject to a judgment in the Circuit Court of Williamson County, recovered by Jackson and Adams against said Peter A. Perkins, on the 11th of March, 1861, for $———, from which an appeal was taken to the supreme court, where the judgment had been recently affirmed, and execution had been issued and levied on the land, the debt amounting to $1,405 and costs. They insist that they are entitled to be protected in the first instance to the extent of the said judgment lien, and the justness of this claim was conceded in argument.

Proof was taken, and the cause heard by the Chancellor on the 3d of August, 1867, who rendered a decree in favor of the complainants. An appeal was taken to the supreme court by W. O'N. Perkins, trustee, and Sarah A. Perkins, and the cause was by that court remanded, with directions to make the children of Peter A. and Sarah A. Perkins parties to the suit, the court being of opinion that they were necessary parties. This has been done, and new proof taken, and the cause has again come on to be heard.

Only one of the bills, it will be recollected, and that the last one filed, alleges that the settlement and transfer attached was made with a fraudulent intent in fact to hinder and delay creditors, the other two bills relying on the ground that the settlement was voluntary, and, in view of the indebtedness of Peter A. Perkins to them, and other persons, at the time, fraudulent by implication of law. The fraud in fact charged in the McAllister bill, is denied positively by the answers, and is clearly not sustained by the proof, and may be laid out of view.

The controversy is, therefore, narrowed down to the point whether the transfer and assignment of the note, and the

settlement of Peter A. Perkins on his wife and children by his deed of the 31st of May, 1862, are void in law, under the circumstances developed in the record, in favor of the complainants as creditors at the time. The first two bills expressly charge that the note in controversy was transferred and assigned to the defendant, W. O'N. Perkins, as trustee. The McAllister bill, which is worded more cautiously than either of the others, states that the note was held and claimed by W. O'N. Perkins, under the trust settlement which is attacked. The trustee, in his answer, states that the note was "indorsed and delivered" to him by Peter A. Perkins, the payee. My attention has been directed to the exact state of facts made in the pleadings and proof, by the line of argument of the complainant's counsel on the assignment of the note. His argument is, that there is no evidence of the indorsement of the note by Peter A. Perkins, and that the assignment of the note by the deed carried only an equitable title, which is incomplete as to a creditor of the assignor unless notice has been given to the debtor; that the registration of the deed of settlement would not operate as notice of the assignment of the note, there being no law requiring the registration of deeds by which notes are assigned. The result would be, from these premises, that the right of the attaching creditors would be superior to that of the trustee under the assignment. But the defect in the reasoning is, in contending that a negotiable security falls within the principle contended for, and which has been recognized by our Supreme Court, in relation to the assignment of a chose in action: *Clodfelter* v. *Cox*, 1 Sneed, 330 339. Negotiable securities, it is well settled, and by our own courts, are not choses in action to which the rule referred to applies: *Sugg* v. *Powell*, 1 Head, 221; *Mu. Prot. Ins. Co.* v. *Hamilton*, 5 Sneed, 269, 274; and may be transferred by delivery, so as to pass the entire right as against the debtor, whether the legal title in the instrument passed by the assignment or not. *Gayoso Savings Inst.* v. *Fellows*, 6 Cold. 487. Besides, although the registration of a deed assigning choses in action

is not required, yet such registration, in all cases of conveyances of goods or chattels on a consideration not deemed valuable in law, is made necessary as against creditors of the grantor, unless possession remains with the donee: Code, § 1,760. In this case, the note was delivered certainly, and perhaps assigned to the trustee, and has remained in his possession. The deed of settlement, moreover, was duly proved and registered in September, 1862. Every requirement of the law to validate the gift, if it be a gift, has been complied with, and the right of the trustee and beneficiaries is the better right, unless indeed the whole transaction is fraudulent and void by implication of law as against the complainants. For a conveyance may be free from objection under § 1,760 of the Code, and yet be void for fraud. Whether it is void in such case will depend upon the Code, § 1,759, and the Statutes of Frauds of 13 and 27 Elizabeth. The question recurs, therefore, is the settlement of the 31st of May, 1862, void by implication of law under the circumstances.

The facts are, that Peter A. Perkins intermarried with the defendant, Sarah A., in 1849, and received with her some fifteen slaves, and a tract of land, which she allowed to be sold about 1850 for the benefit of her husband. The wife, as we have seen, claims in her answer that the husband, in consideration of her consent to this sale, agreed to settle property upon her to her sole and separate use. There can be no doubt that such a contract, clearly and distinctly proved, would sustain a conveyance to or for the benefit of the wife: *Powell* v. *Powell*, 9 Hump. 484, and *Ready* v. *Bragg*, 1 Head, 513. The true rule on the subject was laid down by the Vice-Chancellor in *Wickes* v. *Clarke*, 3 Edw. 58: "Prior advances to the husband out of a wife's property will not be taken as part consideration of a settlement (when not mentioned therein), unless there was an agreement, at the time they were made, to secure her a settlement. There must be an intentional connection between the previous advances and the subsequent deed." But the

evidence relied upon in this case, outside of the testimony of the husband and wife, which is clearly incompetent, is not satisfactory of any agreement at all, and the claim of the wife in this regard is not mentioned in the settlement nor connected with it, and cannot be sustained.

At the time of the settlement upon his wife, Peter A. Perkins was a man of handsome estate. He owned sixty or seventy slaves, part in this state on the plantation sold to the Lumsdens, part in Mississippi, on a plantation which he seems to have bought not long before, and on which he had made one payment of several thousand dollars. He owned personal property on his farms, and held debts or choses in action on third persons. The sale to Lumsden in October, 1861, was for $40,000, of which he retained the cash payment, $27,512, and settled on his wife the note for the deferred payment, $12,488. He also conveyed in trust for her about one-half of his slaves, retaining the other half, and all his other personalty. All the debts that he then owed, so far as the proof shows, excluding the debt for the land in Mississippi, which seems to have been subsequently paid by a sale or return of the land itself, and excluding also the debts due to the complainants, amounted to only about $2,325.89, of which $1,457.58 were subsequently paid out of his effects. The residue, being the Jackson and Adams judgment, was in the supreme court by appeal, and paid by the Lumdens to protect the land they had bought from being sold under execution thereon, as explained in their answer. The proof shows that Peter A. Perkins had paid in 1859, 1860 and 1861, judgments against him to the amount of $13,222.75; and on the 9th of December, 1861, he paid other judgments amounting to $10,255.92. This last amount was probably paid out of the money received from the Lumsdens, leaving still in his hands of that money over $17,000. The complainant's claims were at that time between three and four thousand dollars.

The continuous payment of his debts up to the settlement

on his wife is strongly persuasive that Peter A. Perkins was not thus seeking to cover up his property, or perhaps dreaming of insolvency. The fact, as shown by the proof, that the Bostick debt was collected by legal proceedings, to which no resistance was made, and that the surplus proceeds of sale were paid over to Mrs. Perkins for her husband, who was then in Kentucky, shows that active diligence on the part of creditors would not have been without fruit. There is nothing in the proof tending to show that Peter A. Perkins, at any time, sought to cover up his property, or avoid the payment of his just debts. He had, when the settlement was made, so far as appears, sixty or seventy slaves, $17,000 in money, about the same perhaps in notes, and a few thousand dollars in personalty.

The question then comes to this : Is the settlement upon a wife and children, made in good faith by a solvent, and even wealthy debtor, of one-half his slaves and about one-third of his other personalty, void in law because he was then indebted to the extent of three or four thousand dollars which still remains unpaid, the money and other personalty, exclusive of slaves, amounting to four or five times the debt, and the slaves themselves, most of them being in Mississippi, worth in ordinary times probably $15,000 in addition. Or to put the question more tersely : Is a voluntary settlement in favor of wife and children by a debtor of one-third of his clearly valuable property and one-half of his doubtful property, good against creditors where the valuable property retained exceeds the debts four or five times, and the doubtful property nominally as much more, depending as to its value upon a contingency then uncertain? Put in this form, there can be but one answer, unless the law settles the matter otherwise, by a stern and inflexible rule, such as was laid down by Chancellor Kent in *Reade* v. *Livingston*, 3 J. Ch. 501. That rule was, that a voluntary settlement was void as to existing creditors *per se*, being put by the distinguished Chancellor upon high grounds of public policy, and as he thought, sustained by the actual decisions up to that date.

As long ago as the time of Lord Hardwicke, that eminent judge in the case of *Russel* v. *Hammond*, 1 Atk. 15, referred to by our supreme court in *Smith* v. *Greer*, 3 Hum. 121, but by a wrong name, is reported to have said that "there are many opinions that every voluntary settlement is not fraudulent; what the judges mean is, that a settlement being voluntary is not for that reason fraudulent, but an evidence of fraud only. Though," he adds, " I have hardly known a case where the person conveying was indebted at the time of the conveyance that has not been deemed fraudulent."

The key-note thus struck by the master-hand has been echoed by his successors until the harmony of the rulings may be considered as controlled by it. The meaning is, that the fact that the conveyance is voluntary, is presumptive of fraud as to existing creditors, a presumption not easily overturned, but which, nevertheless, like all presumptions may be explained away. It was not every indebtedness of the grantor which would be held to hinder and delay creditors. The general rule thus expressed, was followed up by Lord Alvanley, the Master of the Rolls, in *Lush* v. *Wilkinson*, 5 Ves. 387, defining the indebtedness which ought to avoid the deed as to existing creditors. It ought not to be any indebtedness, for there is scarcely any man who can avoid being indebted to some amount. "It must depend," he says, "upon this: Whether he was in insolvent circumstances at the time." Chancellor Kent, in *Reade* v. *Livingston*, speaks of this as a loose dictum, without any preceding decision to give countenance to it. But it has been followed by subsequent English cases: *Shears* v. *Rogers*, 3 Barn. & Ald. 362; *Gale* v. *Williamson*, 8 Mees. & Wels. 405, 409, 411; *Norcutt* v. *Dodd*, 1 Cr. & Ph. 100, 103. See, however, *Townsend* v. *Westacott*, 2 Beav. 340, 345, and *Spirett* v. *Willows*, 34 L. J. Ch. 365. This was the doctrine of *Holloway* v. *Millard*, 1 Mad. Ch. R. 417, 419, also cited by our Supreme Court in *Smith* v. *Greer*, 3 Hum. 121. "A conveyance," says Sir Thomas Plumer, in that case, "is not

fraudulent merely because it is voluntary: * * It being voluntary is *prima facie* evidence, where the party is *loaded* with debt at the time, of an intent to defeat and defraud his creditors."

The conclusion thus reached by the English courts, upon the statutes of Elizabeth, has long been the settled doctrine of the state of New York, notwithstanding the weight of authority of their great Chancellor. A voluntary conveyance is held not to be *per se* fraudulent as against creditors to whom the grantor was indebted at the date thereof : *Verplank* v. *Sterry*, 12 J. Rep. 536 ; *Bank of the United States* v. *Housman*, 6 Paige, 526. And even though the grantor do not pay his debts existing at the time : *Van Wyck* v. *Seward*, 6 Paige, 62 ; *Jackson* v. *Town*, 4 Cow. 604.

The subject has undergone discussion before the supreme court of the United States, and that court has come to the conclusion, that the mere fact of indebtedness at the time of the conveyance does not, *per se*, constitute a substantive ground to avoid a voluntary conveyance for fraud, even in regard to prior creditors. The question whether it is fraudulent or not, is to be ascertained not from the mere fact of indebtedness at the time alone, but from all the. circumstances of the case. And if the circumstances do not establish fraud, then the voluntary conveyance is deemed to be above exception : *Hinde's Lessee,* v. *Longworth*, 11 Wheat, 199 ; *Parish* v. *Murfree*, 13 How. 92. And see the elaborate opinion of C. J. Marshall in *Hopkirk* v. *Randolph*, 2 Brock, 132.

Mr. Justice Story, in his Commentaries on Eq. Jur., § 365, arrives at the same conclusion as the result of the authorities, English and American. And Chancellor Kent, in a note to page 442 of the fourth volume of his Commentaries, 5th ed., concedes the tendency of the authorities to be as stated by Judge Story, and that the conclusions of fraud are to be determined as matters of fact ; adding, somewhat mournfully, that "the doctrine of *Reade* v. *Livingston*, and of those English Chancellors upon whom it is rested, is, as I greatly fear, too stern for the present times."    35

The decisions of our supreme Court are in accord with the current of authority, or, if you choose to adopt the idea of Chancellor Kent, with the degeneracy of the times. "As against *existing* creditors," say our court, "the principle is obviously just, that a voluntary settlement or conveyance will be *presumed* fraudulent." *Nicholas* v. *Ward*, 1 Head, 323, 326. "But the statute of 13 Eliz. does not declare voluntary settlements void against creditors, but merely declares that a fraudulent deed shall be void against them. If a man be indebted at the time of making a voluntary deed of settlement, it does not follow that it is void for that reason alone; it is only a *presumption* of fraud: Citing 1 Atk. 15, and 1 Mad. Ch. R. 414. To invalidate a *post* nuptial settlement, the husband must not only be indebted, but he must be indebted at the time to an amount sufficient to have the effect of delaying and defeating creditors:" *Smith* v. *Greer*, 3 Hum. 118, 121. Judge Caruthers is, therefore, justified in saying, as he does in *Burkey* v. *Self*, 4 Sneed, 121: "We consider the weight of authority and reason to be, that indebtedness which bears an inconsiderable proportion in amount to the property reserved, does not, of itself, render a voluntary conveyance void. If the property retained be entirely ample to pay all demands, the gift is good. It cannot be presumed in such a case, from the fact of indebtedness alone, that the object was to defeat creditors of their just demands."

The case of *Churchill* v. *Wells*, 7 Cold. 364, and the Lincoln cases, recently decided by the Court of Arbitration, do not, in the least, contravene this doctrine. Those were cases of fraud in fact.

That the property and effects reserved by Peter A. Perkins at the time of the settlement in controversy, were ample to pay all his debts, and were not fraudulently concealed, is, I think, satisfactorily shown by the proof. The fact that he was subsequently reduced to insolvency by the events of the war, cannot be held to operate *ex post facto*. Few of us, with Southern sympathies, were sufficiently

prescient of the future to foresee, as early as May, 1862, that the war would end in the overthrow of the new Confederacy, and the entire abolition of property in slaves. The fact that the husband had received the slaves of his wife, and the proceeds of the sale of her realty, although not sufficient, under the evidence, to establish a consideration for the conveyance in question, goes far to explain the execution of it, and is persuasive of the good faith of the parties to it. *Hinde* v. *Longworth*, 11 Wheat. 214. This is an extreme case, growing out of the unusual circumstance that the deed was made pending the civil strife, the result of which was disastrous to the grantor beyond reasonable probability, and does not fall altogether in the line of safe precedents. It is like the cases supposed by Chancellor Rutledge in *Jacks* v *Tunno*, 3 Des. 1, of a subsequent loss of property by fire, or by the death of slaves, which ought not to avoid a gift. The proof satisfactorily explains away the presumption of fraud from the voluntary character of the conveyance, and the complainants have not satisfied me that there was fraud in fact. The bills must, therefore, be dismissed, but the costs will be paid out of the fund in controversy.