W. A. CHEATHAM and wife *vs.* JOHN HESS and wife.

April Term, 1877.

HUSBAND AND WIFE—POST-NUPTIAL CONVEYANCE BY HUSBAND TO WIFE.—In order to render advances of the wife's property to the husband a consideration for a subsequent conveyance of the husband's property to the wife, it is essential that a connection should be shown between the previous advances and the subsequent deed by an agreement enforceable in this court, and mere parol promises, not based upon a consideration passing at the time, would be wholly insufficient.

*S. Watson,* for complainants.

*M. M. Brien, jr.,* for defendants.

THE CHANCELLOR:—Bill by a judgment creditor, upon a return of *nulla bona,* to subject land conveyed by the judgment debtor to his wife. On the 23d of November, 1865, one McGavock sold and conveyed to the defendant John Hess two lots, Nos. 79 and 80, in his addition to Nashville, for the consideration of $1,425, the purchaser paying in cash $356.25, and giving his three notes, at one, two, and three years, with interest from date, for $356.25 each. On the 9th of January, 1867, John Hess executed, as surety for another person, the notes upon which the complainants recovered their judgments on the 13th of June, 1872. On the 7th of July, 1871, John Hess sold and conveyed to Charles Nelson lot No. 79, and his saloon on Market street, in Nashville, consisting of bar fixtures, furniture, liquors, license, etc., for $1,300, of which $900 seem to have gone in extinguishment of a debt of that amount due from Hess to Nelson, and the residue Nelson agreed to pay to McGavock in satisfaction of so much of the original purchase money of both lots still due and unpaid. On the same day, 7th of July, 1871, John Hess conveyed the other lot, No. 80, upon which he was then living, in buildings erected by him after his purchase, to his wife, the deed reciting that the conveyance was "for the love and affection I have for my beloved wife." On the 30th of October, 1874, Charles Nelson sold and conveyed lot No. 79 and the saloon to John Hess, jr.,

a son of the defendants, "for the amount of the consideration expressed in the deed of July 7, 1871." And on the same day John Hess, jr., reciting the consideration of natural love and affection, conveyed lot No. 79 to his mother, the defendant. The present bill was filed on the 20th of March, 1876, and sought to reach, for the satisfaction of the complainants' judgments, lot No. 80. The counsel of the complainants concedes that he has been unable to find sufficient ground to impeach the sale to Nelson, and the subsequent conveyances by him to John Hess, jr., and by the latter to his mother. The litigation is, therefore, narrowed down to lot No. 80.

The deed of the 7th of July, 1871, from the defendant John Hess to his wife, being on its face a deed of gift, and the record showing that the said John Hess never owned any other property, since the creation of the complainants' debt, except the two lots and his saloon stock, it is clear that the complainants are *prima facie* entitled to the relief sought. *Nicholas* v. *Ward*, 1 Head, 323. The defence set up in the answer is that one-half of the purchase money for both lots was paid, and " most of the improvements " on lot No. 80 were made, with means which came to the wife from her father, and, according to the answer, " this was done at her instance and request, her husband promising the place should be hers, and that it would be a home for the family." To sustain this defence, proof is made going to show that in 1866 the wife's father wrote to her from Germany, his home, to come or send to him and he would give her a certain quantity of wine and 500 thalers, which, it was his desire, should be so used as to purchase a homestead for herself and children. It is proved that John Hess did go to Europe in 1866, and with a power of attorney from his wife, and did receive some money and a quantity of wine, the latter of which he used and sold in his saloon. There is also some evidence that money was afterwards sent in a draft or drafts from Europe to the wife, which came to the hands of the husband. Some of the

money thus received was, it is almost certain, used in pay-- ing for and improving the lot in controversy. There is. proof, moreover, that the subject of investing some of these means in a home for the family was the topic of conversa-- tion between the husband and wife at or about the time the money was sent for and received. The defendants' son, John. Hess, jr., deposes to a special request by his mother that: the father should go out and look for a home and purchase it for her, and that the father did go and buy the lot in dis-- pute. But as the son dates this conversation in 1866, after the return of the father from Europe, and as the lot in. question had been bought and in part paid for the previous year, by the father, it is obvious that the witness' recollec-- tion is not altogether reliable.

The answer expressly admits that the lot was bought by John Hess, who made the cash payment out of his own. means, and executed his own notes for the residue of the purchase money. By virtue of these facts, and the con-- temporaneous conveyance to him by the vendor of the legal. title, Hess acquired and became vested with an interest in the lot which was subject to the claims of creditors, and of which he could not deprive himself to the prejudice of those creditors by a mere voluntary conveyance. This interest. was increased to the extent of so much of the purchase. money of the lots as was assumed by Nelson under his con-- tract of the 7th of July, 1871; for the consideration of that. assumption was a part of the land itself, and the saloon stock which was the property of John Hess. The actual money consideration of the lot paid by John Hess out of his own means is at least $756.25, which is more than the original amount of the judgments recovered by the com-- plainants. The equity of the wife must be very clear to deprive the creditors of their legal rights, under these cir-- cumstances.

There can be no doubt that a post-nuptial agreement, between the husband and wife, by which property is set.

apart to her separate use, upon a valuable consideration passing from the latter to the former, will be sustained in equity as against the husband's creditors. *Powell* v. *Powell*, 9 Humph. 484; *Lady Arundel* v. *Phipps*, 10 Ves. 140. It is equally certain that the wife may purchase property from a third person with her own means and take the title to her separate use, and that the transaction may be carried out through the husband as agent of the wife. *Ready* v. *Bragg*, 1 Head, 513; *Tarbox* v. *Tonder*, 1 Tenn. Ch. 163. But post-nuptial agreements will not be permitted to stand beyond the value of the consideration as against creditors whose debts existed at the time. *Garlick* v. *Strong*, 3 Paige, 452; *Taylor* v. *Moore*, 2 Rand. 563. And such agreements should be based upon a consideration passing at the time. *Stileman* v. *Ashdown*, 2 Atk. 479; *Anonymous*, Pr. Ch. 101. And at any rate, in order to render advances of the wife's property a consideration for the subsequent settlement of the husband's property on the wife, it should appear that there was an agreement between the husband and wife, at the time the advances were made, to secure her by settlement, and such an agreement as it would be obligatory on him to perform; or that her parting with her own property for her husband's benefit was intended to serve as a consideration for a settlement to be afterwards made by him, and that the deed of settlement when executed had reference thereto; in short, that there was some connection between the previous advances and the subsequent deed. *Wickes* v. *Clarke*, 3 Edw. Ch. 60. Mere parol promises, not based upon a consideration passing at the time, are of no validity. *Lloyd* v. *Fulton*, 91 U. S. 485.

Tested by these principles, the wife's claim in this case cannot be maintained. Not merely the legal title to the lot in controversy, but an unquestionable legal interest in the property, was vested in the defendant John Hess at the date of the conveyance to the wife. There was no consideration then passing between the husband and wife for

the conveyance. There is nothing to show any connection between the previous advances, conceding that there were such advances, and the deed. On the contrary, the deed expressly purports to be a gift, and there is not a particle of parol testimony of anything that took place at the time to call in question the fact thus openly announced. There are cases which hold that if the wife part with a consideration, such as an old settlement by way of jointure, and on the same day a new settlement is made upon her, the court will presume that the one conveyance was in consideration of the other. *Scott* v. *Bell*, 2 Lev. 70; *Anonymous*, Pr. Ch. 101. And it may be, if the two conveyances were within a reasonable time of each other, the same presumption might be made. But it is obvious no such presumption can be allowed where there is an interval of years, without serious hazard to the policy of our registration laws, and without danger of throwing the titles to property into inextricable confusion. There is, moreover, no proof in this case of any actual contract between the husband and wife, based upon a consideration passing at the time, which the court could have then enforced. The evidence is merely of conversations before the husband went to Europe, of a wish or intention to invest the funds to be received in a home, or of similar conversations after he had received the money or property, and it falls far short of establishing such a definite contract as a court of equity could specifically enforce. The answer itself does not set up any such contract. It rests the wife's claim to relief upon the fact that the means received from her father had gone to pay at least one-half of the purchase money of the land, and for "most of the improvements," and that this disposition of the funds was at her instance and request, the husband promising that the place should be hers, and a home for the family. But it fails to aver, what is absolutely essential to relief—and the evidence is more defective than the answer in this regard—that the promise of the husband was in consideration of the

receipt of the wife's funds, or that he received them for the express purpose of making the particular investment in this property and none other. *Mallory* v. *Mallory*, Busb. Eq. 80; *Smith* v. *Bank of Wadesborough*, 4 Jones Eq. 307. The complainants are entitled to a decree.