BARBARA SCHAFFNER ET AL., Appellants, *v.* BERNARD SCHILLING ET AL., Respondents.

### May 14, 1878.

1. A court of equity will not relieve against mistakes of law, when to do so would be to violate a settled rule of public policy.

2. Where gross ignorance is one circumstance from which undue influence, or imbecility, may be inferred, it may in that way tend to furnish ground for relief; otherwise equity does not relieve against ignorance of the law which is wilful or the result of gross negligence.

3. Where a widow, having a dower interest in the estate of her deceased husband, invested money in erecting a valuable improvement upon real estate of which her husband died seized, but which then belonged to her children, minors of tender years, the fact that this was done in ignorance of the law, and under the impression that the real estate of her deceased husband belonged by law to her, will not warrant a court of equity, in a direct proceeding for that purpose, in decreeing the title to the mother on payment by her to the children of the naked value of the ground, or in ordering a sale of the property and the repayment to the mother, out of the proceeds, of the value of the improvements.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

FINKELNBURG & RASSIEUR, for appellants: Equity will relieve parties from the consequences of a mistake of law as well as of fact, where the mistake is such a gross mistake of a plain principle of law as to involve great mental imbecility or credulous confidence in the opinion of others, or where the circumstances of the case would tend to deprive one party of his property and confer the same upon another without any consideration. — Story's Eq. Pl., sects. 116–138, and see particularly sects. 138*c*, 138*f*, last edition ; Adam's Eq., marg. p. 190 ; Bispham's Eq., sect. 187 ; Broom's Leg. Max., marg. p. 266 ; Kerr on Fraud, 398 ; *Lansdowne* v. *Lansdowne*, 2 Jac. & W. 205 ; *Bingham* v. *Bingham*, 1 Ves. 126 ; *Wyche* v. *Green*, 16 Ga. 49 ; *Collier* v. *Perkerson*, 31 Ga. 121 ; *Jones* v. *Monroe*, 32 Ga. 181 ; *Evants* v. *Strode*, 11 Ohio, 480 ; *McNaughten* v. *Partridge*, 11 Ohio, 223 ; *Champlin* v. *Laytin*, 1 Edw. Ch. 467 ; *Hunt* v. *Rousmaniere*, 8 Wheat. 174 ; *Harney* v. *Charles*, 45 Mo. 157. The value of improvements made in good faith under a mistake of title have been allowed in partition, and by analogy may be allowed in the case at bar. — *Conklin* v. *Conklin*, 3 Sandf. Ch. 64 ; *St. Felix* v. *Rankin*, 3 Edw. Ch. 323.

D'ARCY & NAGEL, for respondents : It is not sufficient, in order to create an equity for rectification, that there has been a mistake as to the legal construction or legal consequences of an instrument ; there must be a mistake of fact.— Kerr on Fraud, 428 ; *McMurray* v. *St. Louis Oil Co.*, 33 Mo. 385 ; *Speck* v. *Ruffin*, 40 Mo. 405 ; *Lee* v. *Burman*, 55 Mo. 403 ; *Cassidy* v. *Irons*, 1 Mo. App. 595.

BAKEWELL, J., delivered the opinion of the court.

In this case there was final judgment for defendants on demurrer, and plaintiffs appeal. The facts admitted by the demurrer are as follows : Plaintiffs are husband and wife. Plaintiff Barbara, at the date of her marriage to her present husband, was the widow of John Schilling, who died in 1875 leaving two children by her, aged, at the date of this action, fourteen and seven respectively. These children are the defendants. After her husband's death, Barbara received from insurance policies which her husband had during his life taken out for her benefit the sum of $4,700. John Schilling left a valuable estate, consisting of real and personal property, and no debts. The value of the estate is not set out in the petition. The plaintiff Barbara was afraid to deposit her money in bank ; and being ignorant of law, and following the advice of neighbors equally ignorant with herself, she constructed two brick buildings upon a portion of the real estate of which her husband died seized, being a fifty-two foot lot in St. Louis. She thus expended $4,486.45 of her private means derived from the insurance policies spoken of above, supposing, in her ignorance of the law of descents, that the property was her own, and that this was safe and the best investment she could make. Defendants have the fee-simple title to the lot on which these buildings are erected, subject to the rights of their mother as widow. What those rights are, the petition does not state. She may have elected to take one-third in fee, under the provisions of

the statute; but that is not stated, and it will be taken that she did not. The prayer is that the court appoint some competent person to take an account of the money expended by the mother upon this real estate, and also of the present value of the improvements, as also of the ground; and that upon his report being made, the court will either order a sale of the premises and a division of the proceeds, so that the mother shall receive first a proportionate amount equal to the proportionate amount that the appraised value of the improvements bears to the value of the lot, the balance to be divided according to the interests of the parties in the real estate, or that the title be decreed to Barbara, on payment to defendants by her of their interest in the appraised value of the naked ground.

We have no doubt whatever that this demurrer was properly sustained, and that the court had no power to grant the relief prayed for. It would be very destructive to the rights of minor children to hold that one having an undivided interest in a life-estate, or a claim for dower in their real estate, might erect such improvements as he or she might choose upon their land, and then at pleasure, and perhaps choosing a moment of great depression in unimproved property, take the ground from the children at the appraised value of the naked land. Ignorance of the law might in any case be set up, and if alleged it might be impossible to disprove it. It is not necessary, for the purposes of this case, to determine that the maxim that ignorance of the law excuses no one is of such inflexible application that a case may not be supposed (especially when the element of fraudulent imposition upon ignorance enters into the transaction) in which equity might relieve against the evil consequences of a mistake which was not purely one of fact. But we are referred to no case, and we are satisfied that no well-considered case can be found, in which one building upon the property of minors in which he has an interest has been permitted to compel the minors either to purchase

the improvements or to sell him the land, on the ground that the person erecting the improvements was ignorant of the law and did not intend that the improvements should belong to the owners of the soil. The rule is that a building erected without the assent of the land-owner becomes a part of the realty, and the property of the owner of the freehold. This rule has led sometimes to deplorable results in individual cases, but we suppose that no exception to it such as appellants would establish can be found; and as counsel for respondents well say, when speaking of adjudicated cases, *cum tacent, clamant.*

There seems to us to be no equity in this bill. It is a settled rule of law, which it is policy to maintain, that if one builds on another's land the building goes with the land. Any other rule might enable any rich or powerful Ahaz to get the vineyard of his neighbor Naboth at his own price. If this rule were to be disregarded in equity, as chancellors have said in similar cases, it is probable that the courts would hear of many mistakes of just this character. *Browsley* v. *Holland*, 7 Ves. jr. 22; *Charles* v. *Denis*, 42 Wis. 56; *First Parish* v. *Jones*, 8 Cush. 189. This case is not at all like *Harney* v. *Charles*, 45 Mo. 157, which is put partly upon the ground that the delay, which but for the relief granted would have been fatal to plaintiff's title to redeem his land from a tax-sale, was caused by the action of the court. Courts of equity always incline to relief against a forfeiture. No general rule of public policy was violated in that case, and the court is careful to say that it must not be understood as holding that chancery will in ordinary cases relieve from legal mistakes. In the case at bar, common prudence would dictate to the most ignorant person not to proceed without taking legal advice; and the most that can be said is that plaintiff, with her eyes open, chose to take a risk. There seems to be nothing persuasive about the circumstances of the case. The woman was not a lunatic; and if she chose to take it for granted

that what was really her children's property belonged to her by law, she must take the consequences. *Upham* v. *Hamill*, Rt. F. Am. Law Rep. (N. S.) 17, 48.

We are referred by the learned counsel for appellants to two cases in which the value of improvements made in good faith under a mistake of title has been allowed in partition. In *St. Felix* v. *Rankin*, 3 Edw. Ch. 64, the claimant, supposing he had the whole title, improved part of the real estate and mortgaged and sold a portion. It turned out that one forty-second undivided interest in the whole land was in another person. In a bill for partition it was held that complainant and his grantees should have the improved portion, and that the mortgages should be liens upon it. *Conklin* v. *Conklin*, 3 Sandf. 64, was a case of construction of a will. It was held that the parties who in good faith, supposing themselves to be sole owners of the land, had erected valuable improvements, took vested remainders under the will, subject to open and let in afterborn sons; and as there were two after-born sons, the interest of the three who had erected the improvements was only an undivided three-fifths; and on the authority of the case last cited it was held, that having erected these improvements in good faith, supposing themselves to be sole owners, they should be allowed in partition the amount which the present value of the estate was enhanced by the improvements. And so in *Neesom* v. *Clarkson*, 4 Hare, 96, the wife being entitled in equity to real estate under a contract of sale made *dum sola*, the husband, after marriage, completed the purchase and took the conveyance to himself. Supposing the estate his own, he erected valuable improvements and conveyed the property during his wife's life. He survived the wife, and after his death the heirs at law of the wife recovered the estate from the purchaser by a suit in equity. The court held that if the representatives of the husband should contend that he was in as seized in fee of the wife's estate, he could not charge the property for

lasting improvements ; but say that if he succeeds in establishing that during his wife's life he is to be considered as a mortgagee in possession, he may charge the estate with the expenditure on such improvements. The case goes no further than this, though it is cited by the reporter in a note to the last cited case as sustaining the view there taken. The property, in the English case, was bringing in rents : it is suggested that those rents probably greatly exceeded the value of the improvements ; and it is held that the husband can in no case have the improvements and the rents, but that he shall not be charged with so much of the rents as have gone to the permanent improvement of the estate.

It is not at all necessary, however, for the purposes of this decision, to dispute the doctrine of the New York cases cited above. Nor is it denied that there are circumstances under which a tenant in common, in possession supposing himself legally entitled to the whole, and erecting valuable improvements, may have an equity which will give him in partition the benefit of his improvements. Equity will not, however, in every case allow for improvements where partition is sought ; and when it does so, it is on principles not at all decisive of the case at bar.

The case before us is not that of a mortgagee in possession who improves, thus making the estate productive and keeping down interest ; nor, as in *Tarn* v. *Needham*, 3 Paige, 554, is it the case of a tenant in common whose co-tenant stands by and sees him improve, hoping by silence to reap the benefits of the improvements. It is the case of a dowress who erects valuable improvements upon the land of her children, and then together with her second husband asks a court of chancery to decree that she shall have the land at its appraised value or that the land be put up at forced sale. What might be done in case of partition it is not necessary at all to consider. It is quite clear that no court has a right to compel these children to sell

their land to their mother merely because she has chosen, without any color or claim of right, to build upon it.

Where a legal principle is confessedly doubtful, or where it is plain and palpable and there has been misrepresentation and fraud by which the mistake was induced, courts of equity have undoubtedly relieved against mistakes of law, using the word in the sense only of a private right. But against gross negligence equity does not relieve; and ignorance which is the effect of gross negligence seems to furnish no ground for equitable relief. We do not think that the ignorance of law which is the foundation of the present application furnishes any exception to the general rule. If it were a case of setting aside a contract on the ground of fraud, such ignorance might be one circumstance from which undue influence, fraud, and imbecility of mind might be inferred; but that is not the present case.

We think, therefore, that the Circuit Court committed no error in sustaining the demurrer to this petition; and with the concurrence of all the judges its judgment is affirmed.